## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS PARRY,                          )
                                       )  Civil Action No. 11-1318
                  Petitioner,          )
                                       )
v.                                     )  Magistrate Judge Cynthia Reed Eddy
                                       )
SUPERINTENDENT KERESTES,               )
                                       )
                  Respondent.          )
                                       )

## MEMORANDUM OPINION AND ORDER[1]

Petitioner, Thomas Parry, a state prisoner previously incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his conviction for Driving under the Influence of Alcohol. For the reasons that follow, the Petition will be granted to allow Petitioner to pursue his direct appellate rights *nunc pro tunc*.

### A. Relevant Procedural History

On July 12, 2007, Trooper Eric Zona of the Pennsylvania State Police was working the four to midnight shift in full uniform and a marked police vehicle. Late into his shift he assisted· another trooper with a hit and run accident on Plummer School Road in West Newton, South Huntingdon Township. After clearing the scene, both officers traveled north on Plummer School Road and came to a stop at the intersection of Plummer School Road and State Route 136. At approximately 11:20 p.m., Trooper Zona observed a blue 1987 Ford Tempo on SR 136 traveling westbound approaching the intersection. The Ford Tempo made a right turn partially entering

---

1 The parties consented to jurisdiction by a United States Magistrate Judge. *See* ECF Nos. 18 and 19. *See also* 28 U.S.C. § 636(c)(1).

1

Plummer School Road and quickly applied its brakes and stopped momentarily. After another vehicle traveling westbound on SR 136 passed the intersection, the Ford Tempo pulled back onto SR 136. Trooper Zona testified that the Ford Tempo's rear tires squealed and spun and the vehicle left the area at a high rate of speed although he was unable to testify with any accuracy as to the exact rate of speed the car was moving.

Trooper Zona pursued the Ford Tempo and effectuated a traffic stop at the intersection of SR 136 and SR 31. Petitioner was identified as the sole occupant and driver of the Ford Tempo. Trooper Zona testified that he smelled a strong odor of alcohol coming from inside the vehicle. Petitioner refused to do field sobriety tests and indicated that he had too much to drink and the officer caught him. Petitioner was placed under arrest and his BAC was .17%. According to his driving record, his license was suspended for driving under the influence.

As a result of this incident, Petitioner was charged with two counts of driving under the influence (DUI), driving with a suspended license, driving with a suspended license-DUI-related, as well as the summary offenses of failing to register the vehicle, careless driving, and restriction on alcoholic beverages. Jeffrey Monzo, Esquire, represented Petitioner during his pre-trial and trial proceedings. On February 19, 2008, Petitioner filed a Motion to Suppress on the basis that Trooper Zona lacked reasonable suspicion of a violation of the motor vehicle code to justify the stop of his vehicle. An evidentiary hearing was held on April 22, 2008 during which the transcript of Trooper Zona's testimony from the preliminary hearing was provided as evidence. On April 22, 2008, the Honorable John E. Blahovec, then President Judge of the Court of Common Pleas of Westmoreland County, denied Petitioner's Motion to Suppress.

A non-jury trial was held on January 29, 2010 before the Honorable Debra A. Pezze. Petitioner was found guilty of the two counts of DUI, one count of driving with a suspended

2

license, and failure to register his vehicle. Petitioner was aquitted of driving with a suspended license-DUI-related, and the summary offenses of careless driving and restriction on alcoholic beverages. On April 20, 2010, he was sentenced to an aggregate sentence of eighteen to sixty months of imprisonment. At the end of the hearing, Judge Pezze stated on the record that "Mr. Monzo has already indicated that he will be perfecting an appeal." Sentencing Transcript, p. 15.

On May 11, 2010, Petitioner filed a motion for appointment of appellate counsel (ECF No. 12-8, p. 24-25). In that pleading, he asserted that he no longer could afford to retain his private attorney and wished to preserve his right to appeal. On that same date, he filed a Motion to Proceed *In Forma Pauperis* and indicated that he had only $94.00 in his inmate account and no monies in any checking or savings account (ECF No. 12-8, pp. 31-33). In addition, Petitioner filed a *pro se* Notice of Appeal to the Pennsylvania Superior Court (ECF 12-8, p. 30) and a *pro se* Motion for Transcripts. On May 14, 2010, Petitioner wrote to the Clerk of Court requesting the status of his various motions and indicating his desire to preserve his right to appeal (State Record Docket 48).

On May 17, 2010, Petitioner wrote another letter to the Clerk of Court, which provides as follows.

Dear Clerk:

Kindly abort my appeal recently filed and advise all parties in that matter.

I intend to file post-conviction in the upcoming weeks. I believe Judge Pezze has a clear understanding of the issue and condition of my case at this juncture, and in her wisdom, I believe it is in my best interest to proceed post-conviction before her Court.

State Record Docket 49).

On May 26, 2010, Judge Pezze denied Petitioner's *pro se* Motion for Appointment of Appellate Counsel, Motion for Transcript, and Motion to Proceed *In Forma Pauperis* without explanation (State Record Docket 50).

Sometime thereafter, Attorney Monzo filed a Motion To Withdrawal (sic), which provides as

3

follows.

## Motion to Withdrawal

1. A Non-jury Trial was held in the above matter before the Honorable Debra A. Pezze on April 20, 2010. The Defendant was found guilty of Driving Under the Influence of Alcohol and Driving While Under Suspension.

2. Defendant was sentenced to not less than 18 months nor more than 60 months by the Honorable Debra A. Pezze on April 20, 2010.

3. Counsel for the Defendant, Jeffrey D. Monzo and the Defendant had an agreement that Attorney Monzo would represent the Defendant through a Trial in his case. Counsel did not agree to represent the Defendant on any Post-Sentence Motions or a potential Superior Court Appeal.

4. By letter dated May 6, 2010 Attorney Monzo sent the Defendant information from the file that the Defendant requested and advised him that he was not representing him any further and gave directions for filing the proper appeals.

WHEREFORE, Counsel for Defendant respectfully requests this Honorable Court to enter an Order permitting him to withdraw from representation of Defendant in the above matter.

State Record Docket 51.

On June 1, 2010, Judge Pezze entered the following order.

AND NOW, this 1ˢᵗ day of June, 2010, it is hereby ORDERED ADJUDGED AND DECREED that Attorney Jeffrey D. Monzo, Esquire is permitted to withdraw from representing Defendant in the above matter.

On June 4, 2010, there is a notation on the docket that Petitioner's appeal was discontinued.

On June 23, 2010, Petitioner filed a *pro se* Motion for Post Conviction Collateral Relief. On

August 2, 2010, Petitioner filed a Motion for Leave to Proceed *In Forma Pauperis* and for

Appointment of Counsel and Issuance of Bail. On September 21, 2010, the Court appointed Tim

Andrews, Esquire to represent Petitioner. On October 27, 2010, Attorney Andrews filed an

Amended PCRA Petition wherein he asserted that there was no probable cause to support the arrest.

On November 3, 2010, Tim Andrews was permitted to withdraw and Megan Kerns, Esquire was

appointed to represent Petitioner in his PCRA Petition. On December 10, 2010, Attorney Kerns filed

4

a Petition to Withdraw as Counsel/No Merit Letter. In her No Merit Letter, counsel stated that the only viable issue to pursue concerned the suppression issue but, that for reasons unknown, Petitioner had withdrawn his direct appeal. On December 17, 2010, Petitioner filed a Memorandum of Law with Request for Evidentiary Hearing wherein he asserted that his trial counsel rendered ineffective assistance for failing to protect his right to appeal the suppression issue by abandoning him. On December 21, 2010, Petitioner filed a Motion for Appointment of New PCRA Counsel claiming ineffective assistance of PCRA counsel (State Record Docket 69). On January 4, 2011, Petitioner filed a Motion for Leave to Proceed *Pro Se* wherein he sought reinstatement of his post verdict motions *nunc pro tunc* based on ineffective assistance of counsel (State Record Docket 73). In that motion he claimed that the Clerk of Court improperly handled his notice of appeal and withdrawal therefrom. On January 7, 2011, without explanation, Judge Pezze denied Petitioner's Motion for New Counsel, Motion to Proceed *Pro Se* and Motion for Order to Reinstate Post Verdict Motions (State Record Docket 74). On January 18, 2011, Petitioner filed a Motion for Reconsideration of Judge Pezze's Order denying him reinstatement of his direct appeal rights (State Record Docket 77). Judge Pezze denied this motion without explanation on February 25, 2011 (State Record Docket 78).

On January 19, 2011, Judge Pezze issued an Opinion and Notice of Intention to Dismiss Petitioner's first PCRA Petition without a hearing pursuant to Pa. R. Crim. P. 907. The Opinion provides as follows.

On June 23, 2010, the petitioner filed a Post Conviction Relief Act Petition. Attorney Megan Kerns was appointed to represent the petitioner and has filed a no-merit letter. The Court has also conducted an independent review of the record, and agrees that the petition is meritless.

On January 29, 2010, following a non-jury trial conducted by this Court, the petitioner was found guilty of three counts of Driving Under the Influence of Alcohol and one count of Driving an Unregistered Vehicle.

The petitioner contends that his conviction rests on constitutionally tainted evidence obtained following an invalid vehicle stop. Trial counsel did file a suppression motion, which was denied by the Court after oral argument and filing of

5

briefs. Trial counsel also entered several stipulations into evidence at the time of trial and was permitted to enter additional testimony relative to the suppression motion for purposes of appeal. Trial counsel cannot be held ineffective for diligently advancing a claim which was ultimately denied by the Court.

The petitioner filed a *pro se* appeal to Superior Court, which could have been a venue for his suppression argument, on May 131[stet], 2010, but on June 10, 2010 withdrew the same.

Petitioner attempts to argue trial counsel was ineffective for failing to act on his *pro se* motion for Judgment of Acquittal. The petitioner has failed to show he was prejudiced that the outcome would have been different, in that the motion was in fact filed and denied by operation of law after 30 days.

Lastly, defendant requests nominal bail until this matter is ultimately decided. Bail is denied. The Court intends to dismiss the petition.

ECF No. 1-6; State Record Docket 75. On February 8, 2011, a Court Order was entered

dismissing the PCRA Petition (State Record Docket 82).

On February 7, 2011, Petitioner filed a second Motion for Post Conviction Collateral Relief

wherein he raised the following issues: 1) ineffective assistance of trial counsel in failing to preserve

Petitioner's appellate rights before withdrawing as counsel; 2) ineffective assistance of PCRA

counsel for failing to request reinstatement of direct appeal rights; 3) violation of procedural due

process rights due to failure of the Clerk of Courts to transmit copy of *pro se* Notice of Appeal to

trial counsel as required; and 4) not provided court appointed appellate counsel. Two days later, on

February 9, 2011, Judge Pezze issued an Opinion and Notice of Intention to Dismiss Petitioner's

second PCRA Petition. The Opinion provides as follows.

Petitioner has filed a second Post Conviction Relief Act Petition. The first petition was denied without a hearing on February 8, 2011.

A second or subsequent postconviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of Justice may have occurred. Commonwealth v. Lawson, 519 Pa. 504, 549 A.2d 107 (1988). The petitioner has failed to demonstrate that the proceedings resulting in his conviction were so unfair that a miscarriage occurred which no civilized society can tolerate, or that he is innocent of the crime charged. *Id.*

His second petition contains averments which were addressed in his first

6

petition and denied. The Court fails to find any violation of the State or Federal Constitution or improper obstruction by government officials. Also, petitioner received more than adequate legal representation at trial and PCRA level. Therefore, the Court intends to dismiss the petition.

ECF No. 1-6, p. 3 (83). On March 3, 2011, the second PCRA Petition was dismissed by Order of Court.

Petitioner then filed two separate Notices of Appeal. By Order of Court dated May 5, 2011, the Superior Court dismissed the appeal at 511 WDA 2011 as duplicative of the appeal at 510 WDA 2011 and permitted Petitioner to raise all issues with respect to the denial of both PCRA Petitions. In his appeal, Petitioner raised the following issues: 1) ineffective assistance of trial counsel due to fact that trial counsel stated to trial court he would file an appeal on Petitioner's behalf and then failed to do so; 2) trial court's refusal to appoint counsel to represent Petitioner on his direct appeal; 3) clerical error obstructing Petitioner's right to assistance of counsel for appeal due to the Clerk of Court's failure to forward Petitioner's *pro se* Notice of Appeal to trial counsel; and 4) ineffective assistance of PCRA counsel who filed a no-merit letter to the first PCRA Petition. On January 20, 2012, the Pennsylvania Superior Court affirmed the PCRA court's orders denying Petitioner's PCRA Petitions (State Record Docket 134).

Petitioner filed his timely Petition for a Writ of Habeas Corpus with this Court on September 18, 2011 wherein he raises the following claims.

1.  Ineffective assistance of trial counsel for trial counsel's failure to file a direct appeal or otherwise protect Petitioner's direct appeal rights.

2.  Failure of trial court to provide court appointed counsel to pursue the *pro se* appeal filed by Petitioner.

3.  Obstruction of right to assistance of counsel through ministerial error.

4.  Unlawful search and seizure.

5.  Insufficient evidence to support charge of careless driving based on suppression testimony.

6.      Ineffective assistance of trial counsel for trial counsel's failure to object to the summation offered by the Assistant District Attorney at the close of the suppression hearing.

7.      Ineffective assistance of trial counsel for trial counsel's failure to reopen the suppression motion at the non-jury trial.

For the reasons set forth below, this Court finds that Petitioner is entitled to relief because he was denied his right to pursue his direct appeal with effective assistance of counsel. As such, Petitioner's direct appeal rights should be reinstated *nunc pro tunc* with appellate counsel appointed to represent him on direct appeal. Consequently, the Court need not address any of the remaining claims.

## B. Standards Governing Federal habeas Corpus Review

1.      Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). Even if a state court refuses to consider the claim, it is still exhausted as long as the state court had the opportunity to address it. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir.1989). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d

8

## 2. Procedural Default Doctrine

Like the exhaustion requirement, the procedural default doctrine is based upon notions of comity and federalism. The procedural default barrier rests upon the "independent and adequate state grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman v. Thompson, 501 U.S. 722 (1991). Federal habeas review is available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default if he can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. at 750.

## 3. Standard of Review for Exhausted Claims

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal to the Supreme Court of Pennsylvania in order to exhaust all "available" state remedies for habeas corpus purposes.

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008). A state-court decision involves an "unreasonable application" of clearly established federal law if the state court: (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407.

## C. Relevant Law

The Federal Constitution imposes no obligation upon the States to provide appellate review of criminal convictions. McKane v. Durston, 153 U.S. 684, 687 (1894). When a State does grant appellate review, however, it must ensure that its procedures do not violate the constitutional guarantees of due process and equal protection. Griffin v. Illinois, 351 U.S. 12, 24 (1956) (holding that when a State conditions an appeal on the provision of a trial transcript, the

10

State must furnish free transcripts to indigent defendants who seek to appeal). Accordingly, when a state does provide appellate review, the Fourteenth Amendment guarantees a criminal appellant the right to counsel in first appeals as of right. Douglas v. California, 372 U.S. 353 (1963). Moreover, a first appeal as of right is not adjudicated in accordance with due process of law if the appellant does not have the effective assistance of an attorney. Evitts v. Lucey, 469 U.S. 387, 396-397 (1985).

The Supreme Court has imposed specific requirements on trial counsel to ensure that a defendant's right to a direct appeal is not foreclosed by his counsel's inactions. Specifically, trial counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either: 1) that a rational defendant would want to appeal; or 2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). In making this determination, courts must take into account all the information counsel knew or should have known. Id. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal. Id.

In Pennsylvania, an accused has an absolute right to a direct appeal. Pa. Const., art. V, § 9. Commonwealth v. Wilkerson, 490 Pa. 296, 298, 416 A.2d 477, 479 (1980). Counsel must protect this absolute right "unless the accused himself effectively waives the right." Id. (citing Commonwealth v. Perry, 464 Pa. 272, 274, 346 A.2d 554, 555 (1975)). In addition to the accused's absolute right to a direct appeal of his sentence, the accused has the right to the assistance of court-appointed counsel to pursue such appeal, if indigent. Commonwealth v. Waring, 366 Pa. Super. 144, 145, 530 A.2d 933, 934 (1987). While an accused possesses such rights, he also has the ability to waive his right to counsel and to an appeal. Waring, 366 Pa. Super. at 145, 530 A.2d at 934.

> In determining whether a defendant has waived a constitutional right it is well settled that the federal standards of waiver first enunciated in Johnson v. Zerbst, 304

11

U.S. 458 (1938) apply. Brookhart v. Janis, 384 U.S. 1 (1966). The waiver of a constitutional right must be "an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464. The presumption must always be against the waiver of a constitutional right. Glasser v. United States, 315 U.S. 60, 70-71 (1942). Nor can waiver be presumed in a silent record case. The United States Supreme Court explicitly ruled in Carnley v. Cochran, 369 U.S. 506 (1962):

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

Commonwealth v. Norman, 447 Pa. 217, 221, 285 A.2d 523, 526 (1971).

In order to protect the rights of criminal defendants, Pennsylvania Rule of Criminal Procedure 120 prohibits the withdrawal of trial counsel except upon leave of court. Specifically, Rule 120 sets forth the following requirements for defense counsel in criminal prosecutions, whether privately retained or court appointed.

### Rule 120 Attorneys--Appearances and Withdrawals

#### (A) Entry of Appearance

(1) Counsel for defendant shall file an entry of appearance with the clerk of courts promptly after being retained, and serve a copy of the entry of appearance on the attorney for the Commonwealth.

. . .

(4) An attorney who has been retained or appointed by the court shall continue such representation through direct appeal or until granted leave to withdraw by the court pursuant to paragraph (B).

#### (B) Withdrawal of Appearance

(1) Counsel for a defendant may not withdraw his or her appearance except by leave of court.

(2) A motion to withdraw shall be:

> (a) filed with the clerk of courts, and a copy concurrently served on the attorney for the Commonwealth and the defendant; or

> (b) made orally on the record in open court in the presence of the defendant.

12

(3) Upon granting leave to withdraw, the court shall determine whether new counsel is entering an appearance, new counsel is being appointed to represent the defendant, or the defendant is proceeding without counsel.

Pa. Rule Crim. Proc. 120.

Under paragraph (B)(2), counsel must file a motion to withdraw in all cases and counsel's obligation to represent the defendant, whether as retained or appointed counsel, remains until leave to withdraw is granted by the court. *See, e.g.*, Commonwealth v. Librizzi, 810 A.2d 692 (Pa. Super. Ct. 2002). Thus, once an appearance is entered, a criminal trial attorney is responsible to diligently and competently represent the client until his or her appearance is withdrawn. This responsibility includes filing an appeal when the client so requests. Moreover, the court must make a determination of the status of a case before permitting counsel to withdraw. Rule 120(B)(3). Although there are many factors considered by the court in determining whether there is good cause to permit the withdrawal of counsel, when granting leave, the court should determine whether new counsel will be stepping in or the defendant is proceeding without counsel, and that the change in attorneys will not delay the proceedings or prejudice the defendant, particularly concerning time limits.

Moreover, Pennsylvania law prohibits hybrid representation. Commonwealth v. Ellis, 534 Pa. 176, 626 A.2d 1137 (1993). Rule 576(A)(4) of the Rules of Criminal Procedure provides: "In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt." This procedure

13

gives counsel both the opportunity and the responsibility to follow up on the client's wishes and properly present them to the court. *See also* Pa. Rule App. Proc. 3304 ("Where a litigant is represented by an attorney before the Court and the litigant submits for filing a petition, motion, brief or any other type of pleading in the matter, it shall not be docketed but forwarded to counsel of record.").

In the case at bar, on April 20, 2010, at the end of the sentencing hearing, Judge Pezze stated on the record that "Mr. Monzo has already indicated that he will be perfecting an appeal." Sentencing Transcript, p. 15. However, in his Motion to Withdraw, Mr. Monzo claimed that he and Petitioner had an agreement that he would represent Petitioner only through trial but would not represent Petitioner on any post-sentence Motions or on appeal. Notwithstanding, Mr. Monzo did not make any effort during the sentencing hearing to enlighten Judge Pezze that he had no intention of filing an appeal. On May 10, 2010, Petitioner sent the Clerk of Courts a *pro se* motion for Judgment of Acquittal and a letter to Judge Pezze, which advised her that he had mailed Mr. Monzo a copy of the Motion for Acquittal asking him to file it forthwith as his 30-day time period for filing an appeal would be expiring soon (State Record Docket 43). This filing was received by the Court on May 12, 2012.

On May 11, 2010, apparently having received Mr. Monzo's May 6, 2010 letter, Petitioner filed a Motion for Appointment of Appellate Counsel, a *pro se* Motion for Transcripts, and a Motion to Proceed *In Forma Pauperis* asserting that he no longer could afford to retain his private attorney and wished to preserve his right to appeal and had only $94.00 in his inmate account and no monies in any checking or savings account (State Record Docket 44). In addition, Petitioner filed a *pro se* Notice of Appeal to the Pennsylvania Superior Court (State Record Docket 45). In accordance with Pennsylvania law, all of these filings should have been

14

forwarded to Mr. Monzo as he remained counsel of record. The record, however, does not reflect this. On May 14, 2010, Petitioner wrote to the Clerk of Court requesting the status of his various motions and indicating his desire to preserve his right to appeal (State Record Docket 48). On May 17, 2010, Petitioner wrote yet another letter to the Clerk of Court wherein he requested the Clerk to "abort" his appeal based on his understanding that it was in his best interests to pursue relief pursuant to the PCRA (State Record Docket 49). This letter also should have been forwarded to Attorney Monzo as attorney of record at that time. On May 26, 2010, Judge Pezze denied Petitioner's *pro se* Motion for Appointment of Appellate Counsel, Motion for Transcript, and Motion to Proceed *In Forma Pauperis* without explanation.

Mr. Monzo did not file his Motion to Withdraw until after the 30-day appeal period and after Judge Pezze denied Petitioner's various motions identified above. Unfortunately, on June 1, 2010, Judge Pezze granted Attorney Monzo leave to withdraw without making any inquiry as how Petitioner wished to proceed as is required under Rule 120. The record is clear, however, that Petitioner repeatedly expressed his desire to pursue his direct appellate remedies with respect to the alleged illegality of the traffic stop.

The various violations present in this case have operated to deny Petitioner his right to a direct appeal and his right to the assistance of competent counsel during such proceeding. First, it appears that Mr. Monzo provided ineffective assistance of counsel by failing to ensure that Petitioner's direct appeal rights were protected while he remained counsel of record.

A defendant claiming ineffective assistance of counsel must show: 1) that counsel's representation fell below an objective standard of reasonableness; and 2) that counsel's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668 (1984). First, there is no explanation as to why Mr. Monzo waited to file his Motion to Withdraw until after the 30-day appeal period had expired or why he failed to correct the record at the Sentencing

Hearing when the Judge indicated to him that it was her understanding that he would be filing an appeal. If he was not going to represent Petitioner on appeal, clearly, the reasonable action would have been to have filed his motion to withdraw as soon as possible, thus enabling Petitioner to proceed *IFP* and have counsel appointed. Second, based on Mr. Monzo's delay in filing his Motion to Withdraw, there is no reasonable explanation why he failed to file the one-page Notice of Appeal on Petitioner's behalf while he remained counsel of record during the 30-day appeal period, thus protecting Petitioner's appeal rights, particularly in light of the fact that Petitioner had sent him a proposed Judgment of Acquittal to file on his behalf, thus evidencing his desire to appeal.

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court clarified the application of the Strickland standard to a claim that an attorney was constitutionally deficient for failing to file a notice of appeal. In Flores-Ortega, the Court first determined whether counsel in fact consulted with the defendant about a potential appeal. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. "If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* In so holding, however, the Court expressly declined to impose any bright-line test, noting that the circumstances may be such that even a failure to consult would not render counsel's performance deficient. *Id.* Instead, the Supreme Court held that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this

16

particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*

at 480. The Court further explained that in "making this determination, courts must take into

account all the information counsel knew or should have known." To prove deficient

performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his

interest in an appeal. *Id.* at 486.

In its review of this claim, the Pennsylvania Superior Court held as follows.

> Appellant first claims that trial counsel was ineffective for "committing"
> to file an appeal on Appellant's behalf, but later abandoning the appeal. Our
> review of the record refutes this claim. Appellant cites to the trial court's
> comment at sentencing that trial counsel "has already indicated that he will be
> perfecting an appeal in this case." A reading of the entire sentencing transcript,
> however, reveals that Appellant was having trouble raising the money to hire trial
> counsel for the post-sentence and appeal process. In his subsequent motion to
> withdraw, trial counsel averred that he and Appellant only had an agreement that
> trial counsel would represent Appellant through the trial process. Trial counsel
> further averred that he did not agree to represent Appellant on any post-sentence
> motions or in a direct appeal. According to trial counsel, by letter dated May 6,
> 2010, he sent Appellant "information from the file that [Appellant] requested and
> advised him that [trial counsel] was not representing [Appellant] any further and
> gave [Appellant] directions for filing the proper [a]ppeals." Motion to Withdraw,
> 6/4/10, at 1.
>
> Moreover, along with the filing of his *pro se* notice of appeal, Appellant
> filed *pro se* motions for the appointment of appellate counsel, for IFP status, for
> transcripts and for the reinstatement of bail pending appeal. Indeed, in a May 11,
> 2010 letter addressed to the PCRA court, Appellant acknowledged that he was
> proceeding *pro se*. All of these *pro se* filings by Appellant rebut his claim that
> trial counsel "committed" to representing him on appeal.
>
> Finally, Appellant filed a timely *pro se* appeal and thus preserved his
> appellate rights. In a subsequent *pro se* letter to the Westmoreland County Clerk
> of Courts, however, Appellant asked the clerk to "abort my appeal recently filed
> and advise all parties in that matter." Letter, 5/19/10, at 1. Appellant further
> stated that it was in his "best interest" to proceed with a petition under the PCRA.
> *Id.* Thus, contrary to his claim, Appellant's appeal was discontinued as a result of
> his own actions, and trial counsel cannot be found ineffective in this regard.

Sup.Ct.Op. at 6-8 (ECF No. 12-4, 28-30)

Under 28 U.S.C. § 2254, federal courts cannot grant habeas relief in claims adjudicated

on the merits unless the adjudication of the claim resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1),(2). Flores-Ortega constitutes "clearly established federal law" for purposes of AEDPA. Lewis v. Johnson, 359 F.3d 646, 654 (3d Cir. 2004); *see also* Harrington v. Gillis, 456 F.3d 118, 126 (3d Cir. 2006) (concluding that the Superior Court's PCRA decision was contrary to federal law as determined by Supreme Court precedent because the Superior Court applied a *per se* rule that where defendant did not ask counsel to file an appeal, he was not denied effective assistance).

The Superior Court's holding is an unreasonable application of clearly established federal law as set forth in Flores-Ortega. Flores-Ortega obligates counsel to advise "the defendant about an appeal when there is reason to think either that a rational defendant would want to appeal or that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. 528 U.S. at 480. The Supreme Court explained that counsel performs in a professionally unreasonable manner by failing to follow the defendant's instructions with respect to an appeal. The record evidence in this case shows that a reasonable attorney in Mr. Monzo's position would have known that Petitioner desired to file an appeal. As such, it was unreasonable for Mr. Monzo not to have filed the one-page notice of appeal in light of the fact that he did not file his Motion to Withdraw until after Petitioner sent him his proposed motion for Judgment of Acquittal and after the 30-day time period for filing an appeal had expired. This is particularly so when Petitioner's *pro se* pleadings had no legal effect because he was represented by counsel at that time. Commonwealth v. Piscanio, 530 Pa. 293, 298, 608 A.2d 1027, 1029 (1992) (holding that *pro se* appeal from the order denying bail was a nullity where

18

appellant was represented by counsel).[3]

Moreover, this chain of events was compounded when on June 1, 2010, Judge Pezze granted Attorney Monzo leave to withdraw without making any inquiry as to how Petitioner wished to proceed. The record shows that she knew, or should have known, that he desired to appeal the illegal stop issue and had specifically requested appellate counsel to pursue such a claim. Petitioner's clearly established constitutional rights were violated when he was denied counsel to pursue his direct appeal. Douglas, 372 U.S. at 355.[4]

Moreover, although Petitioner requested that his direct appeal be aborted, such action was not a knowing waiver of his direct appeal rights. Specifically, Petitioner sought withdrawal of his direct appeal with the understanding that he could pursue his claim under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. 9541-9546. His letter requesting withdrawal of his appeal indicates that he believed that he had a better chance or pursuing his claim before Judge Pezze, who was not the Judge who had ruled unfavorably on his pre-trial suppression motion. To be eligible for relief pursuant to the PCRA, however, a petitioner must establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa. Cons. Stat. § 9543(a)(3). An issue is "waived" if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-

_____

3. The Superior Court's determination that Petitioner's *pro se* filings rebutted his claim that trial counsel "committed" to representing him on appeal misses the mark. The issue is not whether Mr. Monzo "committed" to represent him; the issue is whether he acted unreasonably in failing to represent him adequately while he remained counsel of record. Moreover, to the extent that the Superior Court implicitly found that Petitioner's *pro se* filings evidenced the fact that he voluntarily was proceeding *pro se* is an unreasonable determination in light of the fact Petitioner affirmatively sought the appointment of counsel to pursue his appeal, and his *pro se* notice of appeal had no effect under Pennsylvania law, which prohibits hybrid representation.

4. Although Petitioner raised this claim in his various pleadings, it was not addressed on the merits.

19

conviction proceeding. 42 Pa. Cons. Stat. § 9544(b). Finally, a petitioner must demonstrate that failure to litigate the issue prior to trial, during trial, or on direct appeal could not have resulted from any rational, strategic or tactical decision by counsel. 42 Pa. Cons. Stat. § 9543(a)(4).

The right to direct appeal in Pennsylvania is subject to waiver provided that it is made voluntarily, knowingly and intelligently. By forgoing his direct appeal, Petitioner waived his suppression issue. A waiver is an intentional relinquishment or abandonment of a known right or privilege; courts indulge every reasonable presumption against waiver of fundamental constitutional rights and do not presume acquiescence in the loss of fundamental rights. Johnson v. Zerbst, 304 U.S. 458, 464 (1938). The determination of whether there has been an intelligent waiver of a fundamental constitutional right depends upon the particular facts and circumstances surrounding each particular case, including the background, experience, and conduct of the accused. Johnson, 304 U.S. at 463.

It does not appear from the record that Petitioner was aware of the waiver of the suppression issue until the Trial Court ruled on his PCRA Petition. The better procedure would have been for the PCRA Court to have conducted a hearing to determine whether Petitioner truly understood that his election to withdraw his appeal would result in waiver of his claim. The failure to have done so leaves this Court without any basis to adequately determine whether an intelligent waiver occurred. Moreover, it does not appear that either the trial court or the Superior Court ever addressed the voluntariness of Petitioner's waiver of his appellate rights, notwithstanding that Petitioner raised this issue in various filings.

In summary, to the extent that the Superior Court adjudicated Petitioner's claims on the merits, he is entitled to habeas corpus relief for the reasons set forth above as the determinations of the state courts are contrary to, and an unreasonable application of, clearly established federal

20

law as set forth by the United States Supreme Court. To the extent that Petitioner raised his claims but they were not addressed by the Pennsylvania Courts, *de novo* review of such claims reveals that he is entitled to habeas relief. Finally, the record shows cause and prejudice, and or a miscarriage of justice sufficient to overcome any default of his claims. An appropriate order follows.

## ORDER

AND NOW, this 26th day of October, 2012: it is hereby **ORDERED** that:

1. The petition for a writ of habeas corpus is **GRANTED**;

2. The execution of the writ of habeas corpus is **STAYED** for 60 days from the date of this Order, during which time Respondent is directed to move the Court of Common Pleas of Westmoreland County to issue an order reinstating Petitioner's direct appeal rights *nunc pro tunc*;

3. After 60 days, if the Court of Common Pleas of Westmoreland County has not reinstated Petitioner's direct appeal rights *nunc pro tunc*, the writ shall issue and Respondents shall release Petitioner from all custody associated with his DUI convictions and related charges, including all conditions of probation and parole; and,

4. The Clerk of Court shall mark this case **CLOSED**.

Cynthia Reed Eddy
United States District Judge

Thomas G. Parry
P.O. Box 69
Elrama, PA 15038